ACCEPTED
03-15-00209-CR
8305271
THIRD COURT OF APPEALS
AUSTIN, TEXAS
12/18/2015 2:08:28 PM
JEFFREY D. KYLE
CLERK

## NO. 03-15-00209-CR

## IN THE COURT OF APPEALS

## THIRD DISTRICT OF TEXAS

## AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
12/18/2015 2:08:28 PM
JEFFREY D. KYLE
Clerk

| | | |
|---|---|---|
| DEANDRE DWIGHT JOSEPH | § | APPELLANT |
| VS. | § | |
| THE STATE OF TEXAS | § | APPELLEE |

## APPEAL FROM THE 403RD JUDICIAL DISTRICT COURT

## TRAVIS COUNTY, TEXAS

## CAUSE NO. D-1-DC-15-904009

## STATE'S BRIEF

**ROSEMARY LEHMBERG**
District Attorney
Travis County, Texas

**Lisa Stewart**
Assistant District Attorney
State Bar No. 06022700
Lisa.Stewart@traviscountytx.gov
AppellateTCDA@traviscountytx.gov
P.O. Box 1748
Austin, Texas 78767
(512) 854-9400
Fax No. 854-4810

Oral Argument Not Requested

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ..................................................................................... 2

**INDEX OF AUTHORITIES** .............................................................................. 3

**STATEMENT OF THE CASE** ........................................................................... 5

**SUMMARY OF THE ARGUMENTS** ................................................................ 6

**STATEMENT REGARDING ORAL ARGUMENT** ......................................... 10

**STATEMENT OF FACTS FROM GUILT/INNOCENCE** ................................ 11

**STATE'S REPLY TO APPELLANT'S FIRST POINT OF ERROR** ...................... 21

The evidence is legally sufficient to establish beyond a reasonable doubt that appellant used a deadly weapon, to-wit: gasoline, in committing aggravated assault. ....................................... 21

**STATE'S REPLY TO APPELLANT'S SECOND POINT OF ERROR** .................. 28

Appellant is estopped from complaining of the lack of a jury instruction on assault because he agreed with the trial judge that there was no evidence that he was guilty only of that offense. Alternatively, the trial judge did not err in refusing appellant's requested instruction on assault. ......................................................................... 28

**STATE'S REPLY TO APPELLANT'S THIRD POINT OF ERROR** .................... 33

The evidence is legally sufficient to establish beyond a reasonable doubt that appellant had the specific intent to set fire to the habitation. .......................... 33

**STATE'S REPLY TO APPELLANT'S FOURTH POINT OF ERROR** ................ 37

No variance exists between the State's pleading and its proof of non-statutory allegations. .....37

**PRAYER** .......................................................................................................... 40

**CERTIFICATE OF COMPLIANCE** ................................................................. 40

**CERTIFICATE OF SERVICE** .......................................................................... 41

# INDEX OF AUTHORITIES

**Cases**

*Adelman v. State,* 828 S.W.2d 418 (Tex.Crim.App. 1992)............................................22
*Aguilar v. State,* 682 S.W.2d 556 (Tex.Crim.App. 1985)........................................ 7, 29, 30, 31
*Arroyo v. State*, 117 S.W.3d 795 (Tex.Crim.App. 2003)............................................29
*Bailey v. State*, 38 S.W.3d 157 (Tex.Crim.App. 2001)............................................23
*Barnes v. State*, 62 S.W.3d 288 (Tex.App. – Austin 2001, pet.ref'd.) ....................................8, 35
*Beltran v. State*, 593 S.W.2d 688 (Tex.Crim.App. 1980) ............................................34
*Bignall v. State*, 887 S.W.2d 21 (Tex.Crim.App. 1994) ............................................8, 32
*Byrd v. State*, 336 S.W.3d 242 (Tex.Crim.App. 2011) ............................................37
*Cada v. State*, 334 S.W.3d 766 (Tex.Crim.App. 2011) ............................................37
*Cody v. State,* 605 S.W.2d 271 (Tex.Crim.App. 1980)............................................36
*Dillon v. State*, 574 S.W.2d 92 (Tex.Crim.App. 1978)............................................34
*Dues v. State*, 634 S.W.2d 304 (Tex.Crim.App. 1982)............................................35
*Ellis v. State*, 2004 Tex. App. LEXIS 914 (Tex.App. - Fort Worth 2004, pet.ref'd.) (not designated for publication) ............................................26
*Flores v. State*, 902 S.W.2d 618 (Tex.App. – Austin 1995, pet.ref'd.) ..............................9, 34, 36
*Geesa v. State*, 820 S.W.2d 154 (Tex.Crim.App. 1991) ............................................22
*Geick v. State*, 349 S.W.3d 542 (Tex.Crim.App. 2011)............................................37
*Goad v. State*, 354 S.W.3d 443 (Tex.Crim.App. 2011) (Alcala, J. concurring)........................32
*Hall v. State*, 225 S.W.3d 524 (Tex.Crim.App. 2007)............................................29
*Hill v. State*, 161 S.W.3d 771 (Tex.App. – Beaumont 2005, no pet.)............................................34
*Hooper v. State*, 214 S.W.3d 9 (Tex.Crim.App. 2007)............................................22
*Jackson v. Virginia*, 443 U.S. 307 (1979) ............................................21
*Johnson v. State*, 364 S.W.3d 292 (Tex.Crim.App.), *cert.denied*, 133 S.Ct. 536 (2012) ..9, 37, 38, 39
*Johnston v. State*, 115 S.W.3d 761 (Tex.App. – Austin 2003), *aff'd. on other grounds*, 145 S.W.3d 215 (Tex.Crim.App. 2004)............................................25
*Magee v. State*, 994 S.W.2d 878 (Tex.App. – Waco 1999, pet.ref'd.) ....................................6, 23
*McCain v. State*, 22 S.W.3d 497 (Tex.Crim.App. 2000) ............................................21
*McDowell v. State*, 235 S.W.3d 294 (Tex.App. - Texarkana 2007, no pet.)..............................24
*Merritt v. State*, 368 S.W.3d 516 (Tex.Crim.App. 2012)............................................22
*Moore v. State*, 969 S.W.2d 4 (Tex.Crim.App. 1998) ............................................34
*Nash v. State*, 115 S.W.3d 136 (Tex.App. – Texarkana 2003, no pet.) ....................................30, 31
*Norwood v. State*, 135 Tex. Crim. 406, 120 S.W.2d 806 (Tex.Crim.App. 1938). ........................35
*Polk v. State*, 693 S.W.2d 391 (Tex.Crim.App. 1985)............................................24
*Ramsey v. State*, 2015 Tex. Crim. App. LEXIS 1138 (Tex.Crim.App. No. 0070-15 delivered October 28, 2015)............................................22
*Rice v. State*, 771 S.W.2d 599 (Tex.App. - Houston [14th Dist.] 1989, no pet.) ....................6, 24
*Rousseau v. State*, 855 S.W.2d 666 (Tex.Crim.App. 1993)............................................30
*Russo v. State*, 228 S.W.3d 779 (Tex.App. - Austin 2007, pet.ref'd.)............................................34
*Skinner v. State*, 956 S.W.2d 532 (Tex.Crim.App. 1997), *cert.denied*, 523 U.S. 1079 (1998) ...32
*Tisdale v. State*, 686 S.W.2d 110 (Tex.Crim.App. 1984) ............................................23
*Wesbrook v. State*, 29 S.W.3d 103 (Tex.Crim.App. 2000) ............................................31

*Williams v. State*, 2014 Tex. App. LEXIS 12562 (Tex.App. – Houston [1ˢᵗ Dist.] 2014, pet.ref'd.) (memorandum opinion) .................................................................................27

*Winfrey v. State*, 393 S.W.3d 763 (Tex.Crim.App. 2013) .........................................................23

**Statutes**

V.T.C.A. Penal Code §1.07(a)(17) ............................................................................. 21, 23, 25

V.T.C.A. Penal Code §15.01(a).........................................................................................33, 34

V.T.C.A. Penal Code §22.01(a)(2) ........................................................................................31

V.T.C.A. Penal Code §22.02(a)(2) ............................................................................. 5, 20, 31

V.T.C.A. Penal Code §28.02 .........................................................................................5, 33

**Rules**

Tex.R.App.Proc. 39.1(c) ........................................................................................................10

Tex.R.App.Proc. 39.1(d) ........................................................................................................10

Tex.R.App.Proc. 47.7(a) ........................................................................................................26

Tex.R.App.Proc. 9.4(e) ...........................................................................................................39

Tex.R.App.Proc. 9.4(i)(2)(A) .................................................................................................39

**NO. 03-15-00209-CR**

**IN THE COURT OF APPEALS**

**THIRD DISTRICT OF TEXAS**

**AUSTIN, TEXAS**

| | | |
|---|---|---|
| DEANDRE DWIGHT JOSEPH | § | APPELLANT |
| VS. | § | |
| THE STATE OF TEXAS | § | APPELLEE |

APPEAL FROM THE 403RD JUDICIAL DISTRICT COURT

TRAVIS COUNTY, TEXAS

CAUSE NO. D-1-DC-15-904009

**TO THE HONORABLE COURT OF APPEALS:**

Now comes the State of Texas and files its brief in response to that of the appellant.

**STATEMENT OF THE CASE**

The State charged appellant[1] by re-indictment with aggravated assault pursuant to V.T.C.A. Penal Code §22.02(a)(2) and attempted arson of a habitation pursuant to V.T.C.A. Penal Code §28.02(d)(2). (CR 27-28). Appellant pled not

---

[1] Appellant had multiple aliases, to-wit: Joseph Deandre, Deandre Dwight Parks, Deandre Parks, Deandre Joseph, Deandra Dwight Joseph. (CR 27, 93).

guilty and had a jury trial. (RR V: 6-7). The State presented evidence, and the trial judge denied the appellant's motion for directed verdict. (RR VII: 238). The jury found appellant guilty of count one, aggravated assault, as alleged in the indictment which alleged gasoline as a deadly weapon. (CR 73). The jury also found appellant guilty of count two, attempted arson of a habitation, as alleged in the indictment. (CR 74). (RR VIII: 39). Appellant pled "true" to the enhancement allegations in the indictment (RR VIII: 43), and, accordingly, the jury assessed appellant's punishment as a habitual offender at 54 years imprisonment and a $10,000 fine on count one (CR 84), and 25 years confinement on count two (CR 85). (RR VIII: 87-88). Appellant timely filed a motion for new trial, which was overruled by operation of law. (CR 63-65). The trial court certified appellant's right to appeal. (CR 86).

## SUMMARY OF THE ARGUMENTS

*State's Reply to Appellant's First Point of Error*: The evidence established beyond a reasonable doubt that the gasoline was a deadly weapon, i.e. that in the manner of appellant's use and intended use of the gasoline, it was capable of causing serious bodily injury or death. The evidence showed that appellant confined the victim in her bedroom, poured gasoline on a tapestry in her room, and then doused the victim and her clothing with gasoline. He tried to set the victim on fire by using a lighted cigarette. When the victim attempted to escape, appellant

6

grabbed another container of gasoline from the living room. Further evidence showed that appellant verbally threatened the victim with physical harm. Expert testimony established that gasoline could be a deadly weapon and that a lighted cigarette could ignite the gasoline. Gasoline may be a deadly weapon in the manner of its use. *Magee v. State*, 994 S.W.2d 878, 890 (Tex.App. – Waco, pet.ref'd.). And, whether gasoline was a deadly weapon in this case was for the jury to decide. *Rice v. State*, 771 S.W.2d 599, 601 (Tex.App. – Houston [14[th] Dist.] 1989, no pet.).

Appellant engages in an erroneous analysis of the deadly weapon issue. He uses a dictionary definition of "weapon" rather than the Penal Code definition of "deadly weapon" in §1.07(a)(17) in analyzing the sufficiency of the evidence. He also fails to consider the totality of the evidence and focuses only on his act of pouring gasoline on the victim.

Viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found beyond a reasonable doubt that gasoline constituted a deadly weapon in this aggravated assault. Appellant's first point of error should be overruled.

***State's Reply to Appellant's Second Point of Error***: Appellant is estopped from complaining that the trial court erred in refusing a jury instruction on the lesser included offense of assault because he agreed with the trial judge that there was no

evidence that he was guilty only of the lesser offense. Furthermore, appellant was not entitled to an instruction on the lesser included offense of assault under the *Aguilar/Rousseau* two-part test because there was no evidence that would permit a rational jury to find that, if the appellant was guilty, he was guilty only of the lesser offense. *Hall*, 225 S.W.3d at 536. The evidence established that appellant confined the victim in her room, called her a pawn and threatened her with harm, doused her with gasoline, and attempted to set her on fire. Police found even more evidence of gasoline inside and outside of the victim's residence.

Appellant's contention that he was entitled to the lesser included offense instruction on misdemeanor assault because the jury could doubt whether gasoline was a deadly weapon is an inappropriate analysis of the issue. There must be some evidence directly germane to the lesser offense that had been positively and affirmatively presented at trial to entitle the defendant to such an instruction. *Bignall*, 887 S.W.2d at 24. It is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense. *Id.*

Because there was no evidence at trial germane to the lesser included offense of assault, the trial judge correctly denied appellant's requested instruction. This point of error should be overruled.

***State's Reply to Appellant's Third Point of Error***: The evidence is legally sufficient to establish beyond a reasonable doubt that appellant had the specific

intent to set fire to the habitation. The evidence showed that appellant did acts constituting more than mere preparation that tended but failed to effect the commission of arson. The jury could rationally infer appellant's intent from his verbal threats of harm and his acts of dousing the tapestry and the victim with gasoline and trying to set the victim on fire while holding her in a locked bedroom. *Barnes*, 62 S.W.3d at 298 (trier of fact infers defendant's mental state from his acts, words, and conduct). Appellant also had a second can of gasoline in the living room of the house, and the victim thought she was going to die.

"Attempt" implies both a purpose and actual effort to carry that purpose into execution. *Flores*, 902 S.W.2d at 620. The evidence showed appellant's purpose and effort in preparing to set the victim and the house on fire. That he actually failed to ignite the victim or the house did not render the evidence insufficient. *Santellan*, 939 S.W.2d at 163 (criminal attempt does not require that every act short of actual commission of the offense be accomplished).

Appellant's third point of error should be overruled.

***State's Reply to Appellant's Fourth Point of Error***: No variance existed between the State's pleading that appellant wet the victim and her clothing with gasoline and contacted her clothing with a lit cigarette and its proof that appellant jabbed his lit cigarette near her feet and legs. When asked if appellant contacted her clothing, the victim testified that she "was wearing long pants at the time so like, yes, in the

9

pants vicinity." (RR VII: 34). This testimony established that appellant contacted the victim's clothing, or, in the very least, provided testimony from which the jury could infer that appellant contacted the victim's clothing. Even if there was a variance in the pleading and proof of this non-statutory language, it was minor and did not constitute an entirely different offense. *Johnson*, 364 S.W.3d at 295. The Court of Criminal Appeals tolerates such "little mistakes" that do not prejudice a defendant's substantial rights. *Id.*

Appellant's fourth point of error is wholly without merit and should be overruled.

## STATEMENT REGARDING ORAL ARGUMENT

This case presents legal sufficiency and jury charge issues, which are not novel. The resolution of these issues turns on the application of the specific facts of these offenses to well-established legal principles. Therefore, the State submits that oral argument is unnecessary as the decisional process would not be significantly aided by oral argument. Tex.R.App.Proc. 39.1(d). The State further submits that the parties have adequately presented the facts and legal arguments in their briefs. Tex.R.App.Proc. 39.1(c). Consequently, the State has not requested oral argument.

## STATEMENT OF FACTS FROM GUILT/INNOCENCE

The victim in this case, Jillian Higgins, shared a house at 6 Kern Ramble in Travis County with several roommates, one of them being Rosalie Miller. (RR VII: 22-23). Miller had dated appellant, and he often stayed over at the house. (RR VII: 23). Higgins knew appellant by the name Deandre Parks. (RR VII: 24).

On July 26, 2104, appellant was no longer dating Miller, but Higgins encountered him at her home.[2] (RR VII: 25). Higgins was in the backyard, digging a hole in which to bury her deceased pet. (RR VII: 25). Appellant entered the yard through a back gate and helped Higgins. (RR VII: 25). After digging the hole, Higgins went to her room to change her sweaty shirt. (RR VII: 26). Appellant followed Higgins into her room, shut the door behind him, and then stood between Higgins and the door, blocking her exit from the room. (RR VII: 26, 29). Higgins felt very uncomfortable. (RR VII: 26).

Appellant did not allow Higgins to leave her room. (RR VII: 26). He wanted Higgins to help him get in touch with Miller. (RR VII: 26). Appellant held a water bottle full of gasoline and smoked cigarettes. (RR VII: 26-27). When Higgins asked him his plan, appellant responded, "I don't really have a plan, I'm just here with this gasoline and smoking this cigarette." (RR VII: 27). Appellant smoked fairly continually while in Higgins's room, lighting his cigarettes. (RR

---

[2] Higgins guessed that the time was about 5 or 6 p.m. (RR VII: 25).

VII: 31). Appellant kept Higgins in her room for about two hours. (RR VII: 27).

She cried throughout the ordeal because she was terrified. (RR VII: 42).

Appellant told Higgins that he was going to use her as a "pawn" to get to Miller.

(RR VII: 30). He also told Higgins that if she "didn't see tomorrow, it wasn't

going to be his fault." (RR VII: 43).

Eventually one of Higgins's roommates, Rhett Radon, came home and

checked on Higgins because the house smelled like gasoline. (RR VII: 27).

Higgins indicated she was fine, but she rolled her eyes and mouthed "help me" to

Radon. (RR VII: 27). Radon played along, said "nice to see you," and went

outside. (RR VII: 27). Higgins admitted to appellant that she had signaled for

help, and he told her "you fucked up." (RR VII: 27). Higgins thought appellant

was going to kill her. (RR VII: 42-43).

Appellant removed a tapestry from the wall in Higgins's room and poured

gasoline on it. (RR VII: 27). Higgins tried to leave her room, but appellant threw

her onto her bed. (RR VII: 27). While holding a lit cigarette, appellant stood over

Higgins and squirt gasoline from the water bottle onto her. (RR VII: 61, 71).

Appellant doused Higgins and her clothing with gasoline, making her skin and

clothes wet. (RR VII: 27, 30). Her skin itched and burned from the gasoline. (RR

VII: 30). Appellant tried to set Higgins on fire by jabbing at her and at her

clothing with a lit cigarette, but she kicked him away. (RR VII: 27-28, 34).

12

Higgins was terrified and thought she was going to die. (RR VII: 33). Tearing her locked bedroom door from its hinges (SX14), Higgins fled her room. (RR VII: 28, 32).

Appellant chased Higgins and caught her on the back porch where she was screaming for help. (RR VII: 28). He grabbed Higgins by the face, pulled her into the house, and put her back in her room. (RR VII: 28). Appellant went into the living room and retrieved a second gas can. (RR VII: 28). While appellant unscrewed the nozzle on the gas can, Higgins escaped through her bedroom window. (RR VII: 28, 33). She ran to a neighbor's house and asked them to call police. (RR VII: 28). Higgins felt very threatened. (RR VII: 28).

The neighbors called 911, and Higgins spoke with a 911 operator. (RR VII: 34). A copy of the 911 call, SX1, was admitted into evidence and played for the jury. (RR VII: 20, 35). Higgins was sobbing and hysterical, and had never been more afraid in her life. (RR VII: 73). Higgins was concerned about the house being burnt down because appellant had purposefully poured gasoline in her bedroom, and he had spilled gasoline from the water bottle when he had chased Higgins from her room, down the hallway, and through the kitchen to the back patio. (RR VII: 35).

Earlier that day, Radon had received text messages regarding appellant. (RR VII: 82). In response to those messages, Radon went to her home that she shared

13

with Higgins and others to retrieve her things to stay at a friend's house. (RR VII: 83). When Radon arrived at her home, she noted that only Higgins was home. (RR VII: 83). Radon entered the home and immediately detected the smell of gasoline. (RR VII: 84). She also noticed that items had been moved in the house and that "something [was] off." (RR VII: 84).

Radon decided to check on Higgins whose bedroom door was closed. (RR VII: 87). Higgins took an unusually long time to open her bedroom door. (RR VII: 87). Higgins only partially opened her bedroom door and barely stepped forward. (RR VII: 87). Radon noticed that Higgins was visibly upset. (RR VII: 87). Higgins appeared to have been crying, and she looked confused, "sad, frightened, something." (RR VII: 87). Higgins denied smelling the odor of gasoline. (RR VII: 88). Higgins also denied knowing anything about the text messages regarding appellant, but she gestured with her eyes and communicated that appellant was behind her in the darkness of her bedroom. (RR VII: 89). Higgins mouthed to Radon "call the police." (RR VII: 89). Radon called 911 and reported that Higgins was being held hostage. (RR VII: 90). Shortly after Radon called the police, she saw appellant fleeing from the house. (RR VII: 91).[3]

---

[3] At this point in the trial, after Higgins and Radon had testified, appellant informed the court that he no longer wanted to be present for the trial, and he voluntarily absented himself from the trial. (RR VII: 92-101).

14

Mike Walton was neighbors with Higgins and Radon and knew appellant from the neighborhood. (RR VII: 102-103). Around 4:00 p.m. on July 26, 2014, Walton was out skateboarding when he encountered appellant in a vehicle. (RR VII: 103). Appellant was agitated and looking for his ex-girlfriend Rose Miller. (RR VII: 105). Appellant told Walton that there would be "bloodshed tonight" and Walton felt threatened. (RR VII: 106-107).

Rosalie Miller met appellant at a homeless shelter where she worked and he received services. (RR VII: 111). They began dating around Christmastime in 2013 and dated for about six months. (RR VII: 112). Miller broke up with appellant, and appellant was very upset and agitated about that. (RR VII: 113). He repeatedly tried to contact Miller and sent her communications varying from desperate, pleading, and sad to threatening, belligerent, and aggressive. (RR VII: 113-114). Appellant even began to threaten Miller's friends. (RR VII: 114).

On July 26th, Miller called her friend Rebecca Ruiz, who lived at the Kern Ramble house, to warn her that appellant had threatened her (Miller's) friends. (RR VII: 115). In the days preceding the incident at bar, appellant had sent Miller text messages threatening Miller's friends and family and indicating that there would be blood on her hands. (RR VII: 117, 121; SX17-22). He told Miller that things were only going to get worse and that she would "be crying forever" because she would not respond to his phone calls. (RR VII: 121). He also

15

indicated that he put a price on her head. (RR VII: 121). Miller took all his threats seriously. (RR VII: 121).

Austin Police Officer Jared Carruth responded to two calls on Kern Ramble on July 26th. (RR VII: 127). The first call came from a man who reported that a woman came to his house at 9 Kern Ramble and said someone had tried to set her on fire. (RR VII: 127). Carruth encountered Higgins there, and she was crying uncontrollably and smelled strongly of gasoline. (RR VII: 127-128). The second call reported that someone was being held against their will at 6 Kern Ramble. (RR VII: 127). Higgins told Carruth that the perpetrator had already fled. (RR VII: 128).

Carruth went to the scene at 6 Kern Ramble and confirmed appellant was not there. (RR VII: 129). The house displayed obvious signs of a disturbance with the bedroom door off its hinges and objects strewn from the bedroom to the back door. (RR VII: 128). The odor of gas in the house was "almost overpowering." (RR VII: 128).

An Austin police officer requested that Lieutenant Joe Loughran, a master fire and arson investigator with the City of Austin, respond to 6 Kern Ramble to investigate. (RR VII: 141, 143). Loughran first surveyed the exterior of the home, which was a standard, wood frame single family residence. (RR VII: 145). Loughran observed a half-full gasoline can outside of Higgins's bedroom window.

16

(RR VII: 147; SX24). At the back of the residence, Loughran found two more gasoline cans, both of which were empty. (RR VII: 148; SX26). Loughran found the water bottle (SX42A) with gasoline[4] in it on the floor of the back porch near the back door. (RR VII: 148; SX28, 29). The concrete floor appeared stained from the gasoline spilling out of the bottle. (RR VII: 149; SX29). Just inside the back door in the kitchen, Loughran found a squeeze cap that appeared to have come off the water bottle. (RR VII: 152, SX37). Loughran also photo documented Higgins's bedroom. (RR VII: 152). He found her clothing[5] that she had been wearing during the attack on the floor; Higgins had already changed clothing by the time Loughran arrived at the scene because she was afraid of the gasoline that was on her. (RR VII: 152; SX38).

Based on his scene investigation and interviews, Loughran determined that appellant intentionally poured gasoline on Higgins and tried to ignite that gasoline with a cigarette butt. (RR VII: 163). As peace officers, he and his partner believed appellant had committed an aggravated assault on Higgins. (RR VII: 163). As arson investigators, they further determined that appellant had committed an attempted arson. (RR VII: 164).

---

[4] The liquid from the water bottle was contained in SX41. (RR VII: 161).

[5] The evidence showed that Higgins had been wearing jeans and a shirt. (RR VII: 160-161). The shirt was admitted into evidence as SX43A, and the jeans were admitted into evidence as SX43B. (RR VII: 160-161).

17

Loughran also testified, based on his experience, that gasoline can be a deadly weapon. (RR VII: 164). Gasoline could be considered a deadly weapon because Loughran had seen many instances in which a person had been doused or squirted with gasoline and ignited on fire, causing them to die from their injuries or suffer serious bodily injury. (RR VII: 164-165). Loughran explained that a cigarette butt can ignite gasoline but not easily. (RR VII: 165). Loughran testified that it was a common misconception that cigarettes easily ignite gasoline because of movies and television. (RR VII: 165). Based on science, there was enough heat in a cigarette butt to ignite gasoline, but it typically did not occur for various reasons. (RR VII: 166). The auto ignition temperature of gasoline ran between 80 and 150 degrees, and a cigarette butt burned at about twice that temperature. (RR VII: 166). The real danger from gasoline was its vapors. (RR VII: 166). The vapors could be ignited with heat and/or an open flame. (RR VII: 166). Loughran explained that the liquid itself did not ignite. (RR VII: 166).[6]

Upon his examination of the interior of the home, Loughran found a cigarette lighter, an ashtray with cigarette butts, and cigarette butts on the floor in Higgins's bedroom. (RR VII: 170). He photographed this evidence but did not seize it because the more important evidence was the plastic bottle with the

---

[6] Loughran testified at trial that even 7 months after this offense, the gas vapors from the victim's clothing could have ignited if exposed to a lighted match. (RR VII: 168-169).

18

gasoline in it.[7] (RR VII: 170). Loughran confirmed that a tapestry would be particularly flammable if gasoline were added to it. (RR VII: 172). Based on his experience, Loughran opined that this was a "non fire event" as there was no ignition because appellant failed to start a fire, not because he lacked the intent to start a fire. (RR VII: 173). At the conclusion of his investigation, Loughran felt confident that appellant had intentionally tried to start a fire, i.e. he had committed an attempted arson. (RR VII: 174, 176). Loughran believed appellant intended to set Higgins on fire, and he noted that if appellant had used a cigarette lighter, rather than a cigarette, the fire would have started in seconds with the gasoline and its vapors. (RR VII: 179). Based on his experience with fire science and as a firefighter, Loughran noted that most arsonists did not use the most effective way to start a fire. (RR VII: 182). Their lack of knowledge usually prevented them from doing the most damage. (RR VII: 182).

Austin Fire Department Captain Andy Reardon, a master arson investigator, executed a search warrant for appellant's clothing and seized it from the Travis County Jail. (RR VII: 190-191). Appellant's left and right athletic shoes (SX44A and SX45A), his denim shorts (SX46A), and t-shirt (SX47A) were admitted into evidence. (RR VII: 195-198). The state arson lab tested these items for flammable liquids, and both shoes tested positive for gasoline. (RR VII: 199). Appellant's

---

[7] And, Loughran felt photographs clearly documented the evidence of the scene with the cigarettes. (RR VII: 170-171).

shirt tested positive for aromatic product[8], which was classified as a flammable liquid. (RR VII: 199). A latent fingerprint found on the plastic water bottled seized at the victim's house matched appellant's right thumb. (RR VII: 216).

Forensic scientist Eric Steinberg tested seven items in this case. (RR VII: 221). The liquid sample from the plastic bottle (SX41) tested positive for gasoline. (RR VII: 223). Higgins's clothing in SX43 also tested positive for gasoline. (RR VII: 225-226). Steinberg found aromatic product on appellant's shirt, but he did not find any ignitable liquid residue on his shorts. (RR VII: 226-227). Steinberg also detected gasoline on both of appellant's athletic shoes. (RR VII: 227-228). Finally, Steinberg detected an aromatic product on the plastic water bottle (SX42). (RR VII: 229-230).

Upon this evidence, the State rested. (RR VII: 234). Appellant then moved for a directed verdict on count one, the charge of aggravated assault. (RR VII: 235). Appellant contended the indictment was fatally defective for not alleging the manner and means by which gasoline could become or was used as a deadly weapon. (RR VII: 237). The trial judge denied appellant's motion. (RR VII: 238). Appellant then moved for a directed verdict on count two, arguing that because no fire was actually set, there was no specific intent to commit arson. (RR

---

[8] Captain Reardon testified that when gasoline breaks down it can come up positive for aromatic product. (RR VII: 199).

20

VII: 238). The trial judge responded that intent was a fact question for the jury. (RR VII: 239). Appellant did not desire to testify, and the defense did not present any evidence. (RR VII: 241). Both sides closed on the evidence. (RR VII: 245).

## STATE'S REPLY TO APPELLANT'S FIRST POINT OF ERROR

**The evidence is legally sufficient to establish beyond a reasonable doubt that appellant used a deadly weapon, to-wit: gasoline, in committing aggravated assault.**

**Indictment, Jury Charge, and Verdict**

In count one, the indictment alleged that appellant committed aggravated assault under Penal Code §22.02(a)(2). Specifically, the indictment alleged that appellant intentionally or knowingly threatened Jillian Higgins with imminent bodily injury by brandishing a bottle containing gasoline at Higgins and by wetting her and her clothing with gasoline and that he used or exhibited a deadly weapon, to-wit: gasoline, during the commission of the offense. (CR 27). In its charge to the jury, the trial court instructed the jury in accordance with the Penal Code that "'Deadly weapon' means a firearm or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." (CR 67). *See* V.T.C.A. Penal Code §1.07(a)(17). The application paragraph for count one tracked the language in the indictment. (CR 68). The jury found appellant guilty of aggravated assault, as alleged in the indictment. (CR 73).

21

**Standard of Review for Legal Sufficiency**

In determining whether the evidence is sufficient to support a conviction, an appellate court must review the evidence in the light most favorable to the verdict by asking whether any rational trier of fact could have found the appellant guilty of the elements of the crime beyond a reasonable doubt. *McCain v. State*, 22 S.W.3d 497, 503 (Tex.Crim.App. 2000) (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)). This familiar standard gives full play to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic to ultimate facts. *Jackson v. Virginia,* 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). The appellate court's duty is to determine if both the explicit and implicit findings of the trier of fact are rational by viewing all of the evidence admitted at trial in the light most favorable to the verdict. *Adelman v. State,* 828 S.W.2d 418, 421-22 (Tex.Crim.App. 1992).

When examining the legal sufficiency of the evidence, the appellate court considers the combined and cumulative force of all admitted evidence in the light most favorable to the conviction to determine whether, based on the evidence and reasonable inferences therefrom, a rational trier of fact could have found each

element of the offense beyond a reasonable doubt. *Ramsey v. State*, 2015 Tex. Crim. App. LEXIS 1138, *7 (Tex.Crim.App. No. 0070-15 delivered October 28, 2015), citing *Jackson v. Virginia*, 443 U.S. at 318–19; and *Merritt v. State*, 368 S.W.3d 516, 525 (Tex.Crim.App. 2012). Beyond a reasonable doubt does not require the State to disprove every conceivable alternative to a defendant's guilt. *Merritt*, 368 S.W.3d at 525; *see Geesa v. State*, 820 S.W.2d 154, 160–61 (Tex.Crim.App. 1991). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey*, LEXIS 1138 at *7-8, citing *Winfrey v. State*, 393 S.W.3d 763, 771 (Tex.Crim.App. 2013); and *Hooper*, 214 S.W.3d at 13. The trier of fact is the exclusive judge of the credibility and weight of the evidence and is permitted to draw any reasonable inference from the evidence so long as it is supported by the record. *Ramsey*, LEXIS 1138 at *8. Inferences based on mere speculation, however, are insufficient to support a criminal conviction. *Id., citing Hooper*, 214 S.W.3d at 16–17.

**Deadly Weapon**

Penal Code §1.07(a)(17) provides that a deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *McCain*, 22 S.W.3d at 503. The provision's plain language does not

23

require that the actor actually intend death or serious bodily injury; an object is a deadly weapon if the actor intends a use of the object in which it would be capable of causing death or serious bodily injury. *Id.* The placement of the word "capable" in the provision enables the statute to cover conduct that threatens deadly force, even if the actor has no intention of actually using deadly force. *Id.; Bailey v. State*, 38 S.W.3d 157, 159 (Tex.Crim.App. 2001); *see Tisdale v. State*, 686 S.W.2d 110, 114-115 (Tex.Crim.App. 1984). Objects used to threaten deadly force are in fact deadly weapons. *McCain*, 22 S.W.3d at 503.

Gasoline may be a deadly weapon in the manner of its use. *Magee v. State*, 994 S.W.2d 878, 890 (Tex.App. – Waco 1999, pet.ref'd.). While not a deadly weapon per se, gasoline, in the manner of its use or intended use, can be capable of causing death or serious bodily injury, and therefore can constitute a deadly weapon according to the statutory definition. *McDowell v. State*, 235 S.W.3d 294, 297 (Tex.App. - Texarkana 2007, no pet.). Whether gasoline, by its manner of use or intended use, is a deadly weapon is properly left for the jury to decide. *Rice v. State*, 771 S.W.2d 599, 601 (Tex.App. - Houston [14th Dist.] 1989, no pet.), citing *Polk v. State*, 693 S.W.2d 391 (Tex.Crim.App. 1985).

**The Manner of Appellant's Use and Intended Use of the Gasoline Rendered It a Deadly Weapon**

Any rational trier of fact could have found beyond a reasonable doubt that the gasoline constituted a deadly weapon. The evidence showed that appellant first

poured gasoline on a tapestry in Higgins's room, then doused Higgins and her clothing with gasoline, and jabbed a lighted cigarette at her and her clothes, trying to set her on fire. When Higgins attempted to escape, appellant forcibly grabbed her and pulled her back into her room. Appellant then went into the living room and retrieved a *second* gas can, but she escaped before he could get it open. When police arrived, the house smelled overwhelmingly of gasoline, and police found a half-full gasoline can outside Higgins's bedroom window. Police found an additional two gasoline cans, both empty, at the back of the house.

In conjunction with these physical assaults and threats, appellant verbally threatened Higgins, telling her that she was just a "pawn" and that if she "didn't see tomorrow, it wasn't his fault." (RR VII: 30, 43). When Higgins fled to the neighbor's house, she told him that someone had tried to set her on fire. (RR VII: 127). Appellant also threatened Miller's friends and told Miller that she would "be crying forever" and would have blood on her hands. (RR VII: 121).

From appellant's actions and words, Higgins thought he was going to kill her. And, a master fire and arson investigator testified based on his experience and the facts in this case that he believed appellant intended to start a fire and intended to set Higgins on fire. Further testimony from this expert also established that gasoline could be a deadly weapon and that a cigarette butt could ignite gasoline.

Viewing all this evidence in the light most favorable to the verdict, any rational trier of fact could have found beyond a reasonable doubt that appellant's use and intended use of the gasoline was capable of causing serious bodily injury or death, thereby making gasoline a deadly weapon per Penal Code §1.07(a)(17). The gasoline had more than a hypothetical capability of causing serious bodily injury or death, and its use was directly related to the circumstances of this aggravated assault. *Cf. Johnston v. State*, 115 S.W.3d 761, 764 (Tex.App. – Austin 2003), *aff'd. on other grounds*, 145 S.W.3d 215 (Tex.Crim.App. 2004). Therefore, the evidence is legally sufficient to sustain the jury's finding that gasoline was a deadly weapon.

The facts in this case are quite similar to those in *Ellis v. State*, 2004 Tex. App. LEXIS 914, *11 (Tex.App. - Fort Worth 2004, pet.ref'd.) (not designated for publication),[9] where **unignited** gasoline constituted a deadly weapon in the manner of its use. In that case, the defendant argued with the victim (his girlfriend), grabbed her by the hair, threw gasoline on her, and forced her into his car where he threatened to set her on fire. *Id.* at *9-10. Much like Higgins, the victim smelled like gasoline and complained that the gasoline burned her skin. *Id.* at *9. A police detective testified that gasoline as used in that case by Ellis, along with his threats to ignite it with a cigarette lighter, constituted a deadly weapon. *Id.* at *10.

---

[9] Tex.R.App.Proc 47.7(a).

**Appellant's Legal Insufficiency Analysis is Erroneous**

Appellant's argument is flawed for several reasons. First, appellant erroneously relies on a dictionary definition of "weapon" to determine if gasoline constituted a "deadly weapon." The appropriate inquiry in this case is whether gasoline constituted a "deadly weapon" as defined in the Penal Code in §1.07(a)(17), i.e. whether in the manner of its use or intended use it was capable of causing death or serious bodily injury. Furthermore, Section 1.07(a)(17) and corresponding case law recognize that "anything" can be a deadly weapon; thus, whether gasoline met the dictionary definition of a "weapon" is an irrelevant and inappropriate inquiry in determining whether any given object was a deadly weapon under the law.

Additionally, appellant focuses only on his act of pouring gasoline on Higgins, rather than considering the entirety of the evidence showing he verbally threatened Higgins, confined her in her room, poured gasoline on her and the tapestry, and attempted to ignite the gasoline with a cigarette. The fact that appellant apparently unknowingly used a challenging method of igniting the gasoline did not render his manner of its use or intended use any less deadly. Nor did it negate his intent to cause serious bodily injury or death to Higgins.

Finally, the gratuitous fact that Higgins did not suffer serious bodily injury or death does not render the evidence insufficient to establish that the gasoline was

used as a deadly weapon. *See e.g. Williams v. State*, 2014 Tex. App. LEXIS 12562, *10-11 (Tex.App. – Houston [1st Dist.] 2014, pet.ref'd.) (memorandum opinion) (gratuitous fact that no resident, firefirghter, or bystander was ultimately injured or killed by resulting fire did not render evidence insufficient to demonstrate that fire was used as a deadly weapon).

The evidence showed that appellant's manner of use and intended use of the gasoline was to ignite it and cause serious bodily injury or death to Higgins, as he threatened. The jury rationally determined that the appellant's manner of use and intended use of the gasoline was capable of causing serious bodily injury or death to Higgins and therefore constituted a deadly weapon. The evidence is legally sufficient to sustain appellant's conviction for aggravated assault. Appellant's first point of error is wholly without merit.

## STATE'S REPLY TO APPELLANT'S SECOND POINT OF ERROR

**Appellant is estopped from complaining of the lack of a jury instruction on assault because he agreed with the trial judge that there was no evidence that he was guilty only of that offense. Alternatively, the trial judge did not err in refusing appellant's requested instruction on assault.**

**Relevant Facts from the Charge Conference**

At the charge conference at guilt/innocence, appellant requested "charges on terroristic threat, deadly conduct, assault criminal mischief." (RR VII: 245). The trial judge asked for evidence "that, if guilty, he is only guilty of those offenses,

28

one by one." (RR VII: 245). Appellant argued that the evidence was consistent with an assault because he pushed Higgins onto the bed. (RR VII: 245). The trial judge noted that there was no evidence that indicated, if appellant were guilty, he was guilty only of that offense. (RR VII: 245). Appellant agreed, responding "that is correct." (RR VII: 245). He then argued that based on the evidence it was possible that the jury could find he did not intend to ignite the gasoline and attempt arson or that he intended to use gasoline as a deadly weapon. (RR VII: 245-246). The trial judge acknowledged that the jury determined the credibility of the evidence, but she reiterated that there needed to be evidence that appellant was guilty only of the lesser included offense to warrant an instruction on that offense. (RR VII: 246). Appellant's theory of the case was that he was only frightening Higgins in an attempt to control her so he could get back in touch with his ex-girlfriend Miller. (RR VII: 247). The trial judge noted that there was no testimony to that effect and denied appellant's requested charge. (RR VII: 247).

**Estoppel**

Under the doctrine of equitable estoppel, a party may be estopped from asserting a claim that is inconsistent with that party's prior conduct. *Arroyo v. State*, 117 S.W.3d 795, 798 (Tex.Crim.App. 2003). During the charge conference at guilt/innocence, appellant agreed with the trial judge that the evidence did not show that if he were guilty, he were guilty only of assault. (RR VII: 245).

29

Because appellant agreed that he did not meet the standard justifying a lesser-included-offense instruction on assault, the State submits he is estopped from complaining of the trial court's refusal to submit such charge to the jury.

**Law on Submitting a Lesser-Included-Offense**

Courts apply the *Aguilar/Rousseau* two-part test to determine whether an instruction on a lesser-included offense should be given to the jury. *Cavazos v. State*, 382 S.W.3d 377, 382 (Tex.Crim.App. 2012), citing *Hall v. State*, 225 S.W.3d 524, 535-36 (Tex.Crim.App. 2007); *McKinney v. State*, 207 S.W.3d 366, 370 (Tex.Crim.App. 2006); and *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex.Crim.App. 1993). First, the court determines if the proof necessary to establish the charged offense also includes the lesser offense. *Hall*, 225 S.W.3d at 535-36. This step is a question of law, and it does not depend on the evidence raised at trial. *Cavazos*, 382 S.W.3d at 382.

If the first step is met, the court moves to the second step of the *Aguilar/Rousseau* test and considers whether there is some evidence that would permit a rational jury to find that, if the appellant is guilty, he is guilty only of the lesser offense. *Hall*, 225 S.W.3d at 536. This second step is a question of fact and is based on the evidence presented at trial. *Cavazos*, 382 S.W.3d at 383. A defendant is entitled to an instruction on a lesser-included offense if some evidence from any source raises a fact issue on whether he is guilty of only the lesser,

30

regardless of whether the evidence is weak, impeached, or contradicted. *Id.* If a defendant either presents evidence that he committed no offense or presents no evidence, and there is no evidence otherwise showing he is guilty only of a lesser included offense, then a charge on a lesser included offense is not required. *Nash v. State*, 115 S.W.3d 136, 139 (Tex.App. – Texarkana 2003, no pet.), citing *Aguilar v. State,* 682 S.W.2d 556, 558 (Tex.Crim.App. 1985).

Before a defendant is entitled to a charge on a lesser included offense, the evidence must not merely raise the possibility of the lesser offense; it must establish the lesser included offense as a valid rational alternative to the charged offense. *Nash*, 115 S.W.3d at 139, citing *Wesbrook v. State*, 29 S.W.3d 103, 113-14 (Tex.Crim.App. 2000). The evidence must allow a jury to conclude rationally that the defendant was guilty only of the lesser offense. *Id.*

**There is No Evidence That Would Permit a Rational Jury To Find That, If the Appellant is Guilty, He is Guilty Only of the Lesser Offense**

The State charged appellant with aggravated assault under Penal Code §22.02(a)(2), alleging assault as defined in Penal Code §22.01(a)(2) as the underlying assault required for §22.02(a). Thus, the proof necessary to establish the charged offense also included the lesser offense. *Hall*, 225 S.W.3d at 535-36. Assault under §22.01(a)(2) was therefore a lesser included offense of the aggravated assault alleged in the indictment. The first step of the *Aguilar/Rousseau* test has been met.

31

But, based on analysis under the second step of the test, appellant was not entitled to an instruction on the lesser included offense. As the trial court noted on the record, there was no evidence that would permit a rational jury to find that, if the appellant was guilty, he was guilty only of the lesser offense. (RR VII: 245). *Hall*, 225 S.W.3d at 536. The evidence established that appellant confined Higgins in her room, called her a pawn and threatened her with harm, doused her with gasoline, and attempted to light her on fire. Besides the gasoline appellant had in the water bottle, police found evidence of more gasoline inside and outside of Higgins's residence. Based on the evidence, no rational jury could conclude that appellant merely meant to frighten Higgins.

Appellant contends he was entitled to the lesser included instruction on misdemeanor assault because the jury could doubt whether gasoline was a deadly weapon. Even if true, that does not entitle him to a lesser included offense instruction.[10] "[I]t is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense; there must be some evidence directly germane to a lesser included offense for the factfinder to consider before an instruction on a lesser included offense is warranted." *Bignall v. State*, 887 S.W.2d 21, 24

---

[10] "After examining the record for all evidence that tends to establish a lesser offense, a trial court, presuming the truth of all the evidence, must then decide whether the evidence supports the lesser offense as a valid, rational alternative to the charged offense." *Goad v. State*, 354 S.W.3d 443, 453 (Tex.Crim.App. 2011) (Alcala, J. concurring). Presuming the truth of all the State's evidence (the only evidence presented at trial) in this case, the record establishes appellant committed the charged offenses and not any lesser offense.

(Tex.Crim.App. 1994). *See also Skinner v. State*, 956 S.W.2d 532, 543

(Tex.Crim.App. 1997), *cert.denied*, 523 U.S. 1079 (1998) (same). While appellant

challenged the credibility of the evidence establishing aggravated assault, he did

not positively and affirmatively present evidence upon which a rational jury could

find gasoline was not a deadly weapon. *Cf. Bignall*, 887 S.W.2d at 24. Because

there was no evidence germane to the lesser included offense of assault, the trial

judge correctly denied appellant's requested jury instruction.

Appellant's second point of error is without merit.

### STATE'S REPLY TO APPELLANT'S THIRD POINT OF ERROR

**The evidence is legally sufficient to establish beyond a reasonable doubt that appellant had the specific intent to set fire to the habitation.**

Count two of the indictment alleged in pertinent part that appellant, with

specific intent to commit the offense of arson of a habitation, did an act, to wit:

"wet[] the clothing and person of Jillian Higgins with gasoline and contact[ed] the

clothing of Jillian Higgins with a lit cigarette while the said Jillian Higgins was

inside a habitation, which amounted to more than mere preparation that tended but

failed to effect to (sic) commission of the offense intended[.]" (CR 28). V.T.C.A.

Penal Code §§28.02 and 15.01(a). In its charge, the trial court instructed the jury

pursuant to Penal Code §15.01(a) and (b), and 28.02(a)(2)(F). (CR 68). The

application paragraph tracked the language in the indictment. (CR 69).

33

**Standard of Review**

The standard of review for legally sufficient evidence to support a conviction was fully discussed in the State's Reply to Appellant's First Point of Error at pp. 22-23, *supra*. The State fully incorporates that discussion into this reply point by reference.

**The Law of Criminal Attempt and Attempted Arson**

A person commits arson with specific intent to damage or destroy a building, habitation, or vehicle if it is the person's conscious objective or desire to engage in the conduct or cause the result. *Beltran v. State*, 593 S.W.2d 688, 689 (Tex.Crim.App. 1980) A person is guilty of attempt if, with specific intent to commit an offense, "he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended." Penal Code §15.01(a). "Attempt" is more comprehensive than "intent," and it implies both a purpose and actual effort to carry that purpose into execution. *Flores v. State*, 902 S.W.2d 618, 620 (Tex.App. – Austin 1995, pet.ref'd.). The law of criminal attempt does not require that every act short of actual commission of the offense be accomplished. *Santellan v. State*, 939 S.W.2d 155, 163 (Tex.Crim.App. 1997). A specific intent to commit an offense means that the accused intended to bring about the offense in question. *Graves v. State*, 782 S.W.2d 5, 6 (Tex.App. – Dallas 1989, pet.ref'd.).

34

**Intent May Be Inferred from Appellant's Acts, Words, and Conduct**

Mental states are almost always inferred from acts and words. *Hill v. State*, 161 S.W.3d 771, 775 (Tex.App. – Beaumont 2005, no pet.), citing *Moore v. State*, 969 S.W.2d 4, 10 (Tex.Crim.App. 1998). The courts have long recognized that mental culpability is of such a nature that it generally must be inferred from the circumstances under which the prohibited act occurred. *Dillon v. State*, 574 S.W.2d 92, 94 (Tex.Crim.App. 1978); *Russo v. State*, 228 S.W.3d 779, 793 (Tex.App. - Austin 2007, pet.ref'd.). A culpable mental state may be inferred by the trier of fact from the acts, words, and conduct of the accused. *Dues v. State*, 634 S.W.2d 304, 306 (Tex.Crim.App. 1982); *Barnes v. State*, 62 S.W.3d 288, 298 (Tex.App. – Austin 2001, pet.ref'd.). Indeed, the Court of Criminal Appeals stated long ago that a defendant's mental state is "concealed within his own mind and can only be determined from his words, acts, and conduct." *Moore*, 969 S.W.2d at 10 (quoting *Norwood v. State*, 135 Tex. Crim. 406, 120 S.W.2d 806, 809 (Tex.Crim.App. 1938).

**Appellant's Specific Intent to Set Fire to the Habitation May Be Inferred from the Evidence**

Any rational trier of fact could find beyond a reasonable doubt from appellant's acts and words, evidence of gasoline at the scene, and expert testimony that appellant had the specific intent to commit arson of the habitation by first igniting Higgins. The jury could rationally infer appellant's intent from his

dousing the tapestry and then Higgins with gasoline and trying to set her on fire with a cigarette while keeping her in a locked room of the house where she thought she was going to die. Appellant also had a second can of gasoline in the living room that he attempted to use. In her 911 call, Higgins expressed fear that about the house being burnt down because appellant had purposefully poured gasoline in her room and spilled it in the house as he chased her. Further, a master fire and arson investigator found two empty gasoline cans at the back of the house, and the house overwhelmingly smelled of gasoline. The jury could rationally infer from the totality of this evidence that appellant had also doused the residence in gasoline in preparation of burning it. Arson investigators determined, based on their experience and investigation, that appellant had committed an attempted arson.

The evidence showed appellant's purpose and effort in preparing to set Higgins and the house on fire. *Flores*, 902 S.W.2d at 620. He only failed to ignite her, but that failure does not render the evidence insufficient. *Santellan*, 939 S.W.2d at 163 (criminal attempt does not require that every act short of actual commission of the offense be accomplished). In *Cody v. State,* 605 S.W.2d 271 (Tex.Crim.App. 1980), the Court upheld the defendant's conviction for attempted arson in absence of evidence that the defendant struck a match and actually started a fire. The evidence in that case showed that the defendant had doused the floor of

a building with gasoline, had a box of matches in his pocket, and there were wads of paper in and near the gasoline.

By dousing the tapestry and Higgins with gasoline and trying to set her on fire with a lit cigarette, appellant did acts amounting to more than mere preparation. He actually tried to effectuate the commission of arson, but failed. The evidence is therefore legally sufficient to establish that appellant had the specific intent to set fire to the habitation.

Appellant's third point of error should be overruled.

## STATE'S REPLY TO APPELLANT'S FOURTH POINT OF ERROR

**No variance exists between the State's pleading and its proof of non-statutory allegations.**

**The Law Recognizes Two Types of Variances**

A variance in pleading and proof can occur in two different ways. *Johnson v. State*, 364 S.W.3d 292, 294 (Tex.Crim.App.), *cert.denied*, 133 S.Ct. 536 (2012). First, a variance can involve the statutory language that defines the offense. *Id.* As to this type of variance, a failure to prove the statutory language pled renders the evidence legally insufficient to support the conviction. *Id.*, citing *Geick v. State*, 349 S.W.3d 542 (Tex.Crim.App. 2011). This type of variance is material. *Cada v. State*, 334 S.W.3d 766, 767 (Tex.Crim.App. 2011).

The second type of variance involves a variance with respect to a non-statutory allegation that describes the offense in some way. *Johnson*, 364 S.W.3d at 295. For non-statutory allegations, the Court of Criminal Appeals tolerates some variation in pleading and proof. *Id.* The Court tolerates "little mistakes" that do not prejudice the defendant's substantial rights. *Id.* "What is essential about variances with respect to non-statutory allegations is that the variance should not be so great that the proof at trial 'shows an entirely different offense' than what was alleged in the charging instrument." *Id.*, quoting *Byrd v. State*, 336 S.W.3d 242, 246-47 (Tex.Crim.App. 2011).

**Application of Law to Facts**

This case involves the second type of variance, to-wit: an alleged variance with respect to a non-statutory allegation that described the offense in some way. *Johnson*, 364 S.W.3d at 295. As noted in the State's reply to the third point of error, the State alleged in part that appellant, with the specific intent to commit the offense of arson of a habitation, had wet the clothing and person of Jillian Higgins with gasoline and contacted her clothing with a lit cigarette. (CR 28). Appellant contends that the evidence only showed that he attempted to contact Higgins's clothing, not that he actually contacted her clothing.

The State submits that no variance existed between the State's allegation that appellant contacted Higgins's clothing and the proof at trial. Higgins testified that

38

appellant threw her onto her bed, doused her and her clothing with gasoline, and had a lit cigarette that "he was trying to touch to [her] body." (RR VII: 27). Higgins explained that she had her feet against appellant's torso, and he jabbed his lit cigarette near her feet and legs. (RR VII: 34). When asked by the prosecution if appellant jabbed any portion of her clothing with the lit cigarette, Higgins testified, "I was wearing long pants at the time so like, yes, in the pants vicinity." (RR VII: 34). This testimony, albeit brief, established that appellant contacted the clothing of Higgins with a lit cigarette, as alleged in the indictment. Or, at the very least, the jury could infer from this testimony that appellant contacted Higgins's clothing with his lit cigarette. Consequently, no variance existed between the State's pleading and its proof. But, assuming *arguendo* there was a variance, it was minor and did not constitute an entirely different offense. *Johnson*, 364 S.W.3d at 295.

Appellant's fourth point of error should be overruled.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, the State prays this Court to overrule the appellant's points of error and to affirm the trial court's judgment.

Respectfully submitted,

ROSEMARY LEHMBERG
District Attorney
Travis County, Texas


*/s/ Lisa Stewart*
Lisa Stewart
Assistant District Attorney
State Bar No. 06022700
P.O. Box 1748
Austin, Texas 78767
Lisa.Stewart@traviscountytx.gov
AppellateTCDA@traviscountytx.gov
(512) 854-9400
Fax No. 854-4810


**CERTIFICATE OF COMPLIANCE**

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(2)(A), the State certifies that the length of this brief is 7,175 words. The State also certifies, pursuant to Texas Rule of Appellate Procedure 9.4(e), a conventional typeface 14-point was used to generate this brief.

*/s/ Lisa Stewart*
Lisa Stewart
Assistant District Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that, on the 18th day of December, 2015, a true and correct copy of this brief was served, by U.S. mail, electronic mail, facsimile, or electronically through the electronic filing manager, to the Appellant's attorney, Randy Schaffer, Attorney at Law, 1301 McKinney, Suite 3100, Houston, Texas 77010, noguilt@swbell.net.

*/s/ Lisa Stewart*
Lisa Stewart
Assistant District Attorney
